UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TYLER UNIQUE MCCLAIN                                                                                         PLAINTIFF

v.                                              No. 2:22-cv-2096

COUNTY OF SEBASTIAN, a municipal corporation;
NICK TUTTLE, individually and in his official capacity
as a Sebastian County Sheriff's Sergeant; BRENT
THOMAS SMITH, individually and in his official capacity
as a Sebastian County Sheriff's Deputy; JONATHAN
DAVID OUTHOUSE, individually and in his official
capacity as a Sebastian County Sheriff's Deputy; and
DOES 1–20, individually and in their official capacities as
employees of the Sebastian County Sheriff's Department                                         DEFENDANTS

**OPINION AND ORDER**

Before the Court is a motion for summary judgment (Doc. 36) filed by Defendants Sebastian County, Nick Tuttle, Brent Thomas Smith, and Jonathan David Outhouse, along with their brief (Doc. 37) and statement of facts (Doc. 38) in support. The Court has also reviewed Plaintiff Tyler Unique McClain's response (Doc. 40), brief (Doc. 41), and statement of facts (Doc. 42) in opposition, as well as Defendants' reply (Doc. 44). For the reasons given below, Defendants' motion is GRANTED IN PART AND DENIED IN PART.

**I.      Background.**

Around 2:00 a.m. on May 14, 2020, Plaintiff Tyler Unique McClain was driving down the highway when her car hydroplaned and she crashed through a fence into a field. Emergency medical services ("EMS") who happened to be in the area noticed her car's flashing lights, and found her laying down next to her vehicle, injured and disoriented. They escorted Ms. McClain to the ambulance and reported the crash to the Sebastian County Sheriff's Office ("SCSO"). When SCSO officers, including the Defendants in this case, arrived, the EMS workers on the scene

1

informed them that Ms. McClain was suffering from low blood sugar levels. Ms. McClain was very confused and did not understand the severity of her injuries nor of the damage to her car. She refused offers to be taken to the hospital, insisting that she wanted to drive herself home. She went to her car and began attempting to repair it with her bare hands, then sat down in the driver's seat and tried to stuff the airbag back into its steering-wheel compartment.

Deputy Brent Thomas Smith repeatedly asked Ms. McClain what she was doing, but Ms. McClain did not respond or even acknowledge his presence and simply continued fiddling with the airbag and her pockets. He then repeatedly asked her to exit her vehicle, but received the same lack of any response to these requests. Then he dragged her out of her vehicle, pinned her face-down on the ground, and he and Deputy Jonathan David Outhouse handcuffed Ms. McClain, at which point she began screaming in terror. Over the next several minutes, Deputies Outhouse and Smith sat on Ms. McClain and used their knees to keep her pinned to the ground while she was handcuffed, despite her repeatedly screaming that they were causing her pain. A few minutes later they helped Sergeant Nick Tuttle place shackles on Ms. McClain's legs. Eventually Deputies Outhouse and Smith dragged Ms. McClain forty yards to a patrol car, forcing her neck and shoulders into a contorted forward position the whole way while she repeatedly screamed that she was in pain. They attempted to push her into the backseat of the patrol car while ordering her to get inside, but because Ms. McClain was handcuffed and shackled she was unable to maneuver herself into the car. Then, Sergeant Tuttle deployed his Taser on Ms. McClain's leg in drive stun mode. He did not give her any prior warning that he would do so other than vaguely stating to his fellow officers "here it comes" a few seconds beforehand.

After locking Ms. McClain into the backseat of the patrol car, the officers drove her to the hospital, where she refused treatment. They then took Ms. McClain to the Arkansas Department

2

of Corrections, where she was charged with two counts of battery, obstruction of government operations, resisting arrest, and disorderly conduct. All charges against her were later dropped.

Ms. McClain filed this lawsuit under 42 U.S.C. § 1983 against Sebastian County, Tuttle, Smith, and Outhouse,[1] alleging that they violated her Fourth Amendment right against the use of excessive force. She seeks damages from the three officers in their individual capacities, as well as damages from the County under the theory of municipal liability for unconstitutional customs or policies, ratification, and failure to train. She has also brought state-law claims against the officers for negligence and violations of the Arkansas Civil Rights Act ("ACRA"). Defendants have moved for summary judgment on all counts, asserting they should be dismissed with prejudice under various theories of immunity.[2]

**II. Legal Standard.**

On a motion for summary judgment, the Court views the record in the light most favorable to the nonmoving party,[3] grants all reasonable factual inferences in the nonmovant's favor, and only grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016). The nonmovant may not rely only on allegations in the pleadings but must identify specific and supported facts that will raise a genuine and material issue for trial. *Ryan v. Cap. Contractors, Inc.*, 679 F.3d 772,

---

[1] Ms. McClain's complaint also named various additional defendants who were subsequently dismissed.

[2] Defendants have also moved for Does 1–20 to be dismissed from this case. Ms. McClain does not oppose this request, which therefore will be granted.

[3] Accordingly, when reciting the facts surrounding Ms. McClain's arrest in this opinion and order, the Court has construed the evidentiary record in the light most favorable to Ms. McClain.

3

776 (8th Cir. 2012).  Facts are material when they can "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Disputes are genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  The burden of demonstrating the absence of any genuine issue of material fact rests on the movant. *Haggenmiller*, 837 F.3d at 884.

**III. Discussion.**

The individual officers argue that qualified immunity entitles them to dismissal of Ms. McClain's excessive-force claims.  "At summary judgment, qualified immunity shields a law enforcement officer from liability in a § 1983 action unless: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Barton v. Taber*, 908 F.3d 1119, 1123 (8th Cir. 2018) (internal quotation marks omitted).  "The right to be free from excessive force in the context of an arrest is clearly established under the Fourth Amendment." *Robinson v. Hawkins*, 937 F.3d 1128, 1135 (8th Cir. 2019).  The test of whether force was excessive is an objective one, evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," allowing for the fact that officers often must make split-second decisions in tense, uncertain, and rapidly-evolving circumstances. *See Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009).  Factors relevant to this inquiry "include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [she] is actively resisting arrest or attempting to evade arrest by flight." *Id.* (internal quotation marks omitted).

The Court has reviewed the entire record, including the officers' body camera footage, and believes that if a jury were to view these recordings and consider them in the light of all other

4

evidence in the record, the jury could very easily and reasonably find, among other things, that: (1) any reasonable officer in this situation would have understood that Ms. McClain was physically injured and extremely disoriented as a result of the automobile wreck she had just endured; (2) there was never a single moment during this interaction when Ms. McClain came even remotely close to presenting a threat to anyone's safety and no reasonable officer in this situation would have believed otherwise; (3) the officers, not Ms. McClain, were solely responsible for escalating the situation; (4) the only "crime" the officers ever suspected Ms. McClain of committing before her arrest was the misdemeanor offense of "knowingly[4] obstruct[ing] . . . the performance of any governmental function" in violation of Ark. Code Ann. § 5-54-102(a)(1) when she failed to comply with the requests to exit her vehicle; (5) during and after the walk towards the officers' car, Ms. McClain was attempting to comply with the officers' instructions to walk towards and get into their car, but she was physically incapable of doing so because of how the officers were physically restraining her and because of the severe physical pain this was causing her; and (6) Ms. McClain was never given any warning that the Taser might be used before it was deployed on her.

In the Eight Circuit, it has been clearly established for decades that it is unlawful to use a Taser or equivalent force against "a nonviolent, suspected misdemeanant who was not fleeing or resisting arrest, who posed little to no threat to anyone's safety, and whose only noncompliance with the officer's commands was to disobey two orders to end her phone call to a 911 operator." *See Brown*, 574 F.3d at 499–500. The Court recognizes the defendants contend that at some points during her arrest, after Ms. McClain was physically restrained, she attempted to kick the arresting officers. But whether this claim is true is a material dispute of fact for the jury to resolve; the

---

[4] The Court further notes a jury could readily conclude that even this suspicion was baseless in light of Ms. McClain's obviously disoriented state, given the statute's requirement that the crime be committed "knowingly."

5

Court's review of the body camera footage indicates that a jury could easily conclude that Ms. McClain never attempted to kick anyone at all.  Likewise, a jury could easily conclude that Ms. McClain's "disobedience" of the repeated requests for her to exit her vehicle was at least as trivial as the failure to end a phone call in *Brown*, given her disoriented and injured state and the obvious lack of any immediate threat that her continued presence in the car posed to anyone's safety.  Finally, given Ms. McClain's already-injured state and her shrieks of pain in response to the non-Taser force that was used against her, a jury could easily conclude that the Taser and non-Taser uses of force during this incident were equivalent.  In other words, a jury could reasonably find that the individual defendants in this case violated Ms. McClain's clearly established Fourth Amendment right to be free from the use of excessive force.  Thus, material disputes of fact remain outstanding which preclude any finding of qualified immunity and summary judgment on her Fourth Amendment claims against the individual defendants at this stage.

However, Ms. McClain's official-capacity claims against the County must suffer a different fate.  "Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Remington v. Hoopes*, 611 F. App'x 883, 885 (8th Cir. 2015).  In the absence of a formal policy, "official-capacity liability is imposed . . . only for constitutional deprivations visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels." *Grayson v. Ross*, 454 F.3d 802, 811 (8th Cir. 2006) (internal quotation marks omitted) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978)).  Here, Ms. McClain has not presented any evidence that the officers' use of force during her arrest was consistent with any formal policy

or informal custom at the County, nor that there was any deficiency in the individual defendants' training. Accordingly, Ms. McClain's official-capacity claims must be dismissed.

The Court turns finally to Ms. McClain's two state-law claims: one for negligence, and one for violations of the Arkansas Civil Rights Act ("ACRA"), both of which are brought only against the individual-capacity defendants. Arkansas law holds that ACRA claims for excessive force are evaluated in an identical manner to 42 U.S.C. § 1983 claims for excessive force; therefore, Ms. McClain's ACRA claims survive summary judgment for the same reasons her § 1983 claims against the individual defendants do. *See Rainey v. Hartness*, 339 Ark. 293, 300 (1999); *Ross v. City of Helena-West Helena*, 2020 WL 7034479, at *6 (E.D. Ark. Nov. 30, 2020). As for negligence, the Arkansas Supreme Court has held that Ark. Code Ann. § 21-9-301(a) provides officials and employees of political subdivisions immunity from liability in their official and individual capacities for negligence in the performance of their official duties, except to the extent they may be covered by liability insurance. *See City of Little Rock v. Dayong Yang*, 2017 Ark. 18, at *5. There is no dispute that the Defendants here do not have any such insurance. Therefore, Ms. McClain's negligence claim will be dismissed.

**IV.   Conclusion.**

IT IS THEREFORE ORDERED that Defendants' motion for summary judgment (Doc. 36) is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that Plaintiff's official-capacity claims under 42 U.S.C. § 1983 and Plaintiff's claims for negligence are DISMISSED WITH PREJUDICE, and that Defendant Sebastian County is accordingly DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that all claims against all Doe Defendants are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Plaintiff's individual-capacity claims against Defendants Tuttle, Smith, and Outhouse under 42 U.S.C. § 1983 and under the Arkansas Civil Rights Act remain for trial.

IT IS SO ORDERED this 19th day of January, 2024.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE