UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

TYLER UNIQUE MCCLAIN PLAINTIFF

v. Case No. 2:22-cv-2096

NICK TUTTLE; BRENT THOMAS SMITH; and
JONATHAN DAVID OUTHOUSE DEFENDANTS

**OPINION AND ORDER**

This is a civil-rights lawsuit brought by Plaintiff Tyler Unique McClain under 42 U.S.C. § 1983 and the Arkansas Civil Rights Act ("ACRA"). Around 2:00 a.m. on May 14, 2020, Ms. McClain lost control of her car on a highway and crashed through a fence into a field. She alleges that several officers employed by the Sebastian County Sheriff's Office who responded at the scene of the accident unreasonably seized her and used excessive force against her.

On January 19, 2024, this Court[1] entered an order (Doc. 47) granting in part and denying in part a motion for summary judgment (Doc. 36) that was filed by the Defendants in this case. Among other things, this Court ruled that Defendants Nick Tuttle, Brent Thomas Smith, and Jonathan David Outhouse were not entitled to qualified immunity at the summary-judgment stage. Those Defendants took an interlocutory appeal from that ruling to the Eighth Circuit, which vacated this Court's order and remanded for further consideration, holding that "[t]he district court's decision lacks consideration of the individual defendants' actions with respect to McClain's excessive force claim against each officer," which left the Eighth Circuit "unable to discern if the district court even applied both steps of the qualified immunity inquiry to *each* officer's summary judgment claim." *See* Doc. 62-1, p. 2 (emphasis in original) (internal quotation marks omitted).

[1] At that time, this case was before the Honorable P.K. Holmes, III, who has since retired from the bench. Accordingly, this matter has been reassigned to the undersigned.

Consistent with that ruling from the Eighth Circuit, this Court has reconsidered the motion for summary judgment (Doc. 36) filed by Defendants Tuttle, Smith, and Outhouse with respect to their asserted defense of qualified immunity, taking care to perform the qualified immunity analysis separately for each individual Defendant.[2] The Court has likewise reviewed those Defendants' brief (Doc. 37) and statement of facts (Doc. 38) in support of their motion, as well as Ms. McClain's response (Doc. 40), brief (Doc. 41), and statement of facts (Doc. 42) in opposition, and the Defendants' reply (Doc. 44). For the reasons given below, Ms. McClain's claims against Deputy Outhouse are DISMISSED WITH PREJUDICE on the grounds of qualified immunity; but her claims against Deputy Smith regarding his forcible removal of her from her vehicle, and her claims against Sergeant Trotter regarding his use of a Taser on her, remain for trial.

**I. Background.**

The January 19, 2024 order began with a lengthy recitation of the facts surrounding Ms. McClain's automobile accident and the officers' subsequent interaction with her. *See* Doc. 47, pp. 1–3. The instant opinion and order will largely adopt and restate that recitation, with some minor clarifications or amendments and additional citations to the record.

Around 2:00 a.m. on May 14, 2020, Ms. McClain was driving down the highway when she lost control of her car and crashed through a fence into a field. *See* Doc. 42, ¶ 4. Emergency

[2] This Court's January 19, 2024 order also dealt with other issues besides qualified immunity. It dismissed with prejudice Ms. McClain's official-capacity claims and her claims for negligence, and dismissed all Doe Defendants and Defendant Sebastian County with prejudice. *See* Doc. 36, p. 7. Those issues not relating to qualified immunity were not the subject of the interlocutory appeal in this matter, and the Eighth Circuit did not address them in its opinion. Accordingly, to whatever extent the Eighth Circuit's vacatur of this Court's January 19, 2024 order might have the incidental or unintended effect of undoing the rulings therein which did not pertain to qualified immunity, this Court now adopts and reinstates those rulings for the reasons given in its January 19, 2024 order, and is not otherwise reconsidering or addressing those issues in the instant opinion and order.

medical services ("EMS") who happened to be in the area noticed her car's flashing lights, and found her laying down next to her vehicle, injured and disoriented. *See id.* at ¶¶ 5–6, 10. They escorted Ms. McClain to the ambulance and reported the crash to the Sebastian County Sheriff's Office ("SCSO"). *See id.* at ¶ 7. When SCSO officers, including the Defendants in this case, arrived, the EMS workers on the scene informed them that Ms. McClain was suffering from low blood sugar levels. *See id.* at ¶ 11. Ms. McClain was very confused and did not understand the severity of her injuries nor of the damage to her car. *See id.* at ¶ 10. She refused offers to be taken to the hospital, insisting that she wanted to drive herself home. *See id.* at ¶¶ 13–14. Deputy Outhouse escorted Ms. McClain to her car to retrieve her personal belongings, where she began attempting to reattach the bumper to her car, *see id.* at ¶¶ 15–16, and then after failing at that climbed into the driver's seat and began trying to stuff the airbag back into its steering-wheel compartment, *see* Doc. 38-2, pp. 65–67. Deputy Outhouse testified at his deposition that Ms. McClain then started her vehicle, that he told her the car was not in a condition to be driven, and that he immediately reached into the vehicle, turned off the ignition, and took the keys from her. *See id.* at 67–69. Deputy Outhouse then called on the radio for Deputy Smith, who was elsewhere on the scene, to come assist him. *See id.*

When Deputy Smith arrived at Ms. McClain's car, his body camera video shows that Ms. McClain remained in the driver's seat and had resumed trying to stuff the airbag back into its steering-wheel compartment. *See* Def. Ex. 2, 0:01–1:10. He repeatedly asked Ms. McClain what she was doing, but she did not respond or even acknowledge his presence and simply continued fiddling with the airbag and her pockets. *See id.* He then repeatedly asked her to exit her vehicle, but received the same lack of any response to these requests. *See id.* Then he dragged her out of her vehicle and pinned her face-down on the ground, *see id.*, and he and Deputy Outhouse

handcuffed Ms. McClain, at which point she began screaming in terror or rage and cursing at them. *See id.* at 1:10–1:46. Over the next several minutes, Deputies Outhouse and Smith sat on Ms. McClain and used their knees to keep her pinned to the ground while she was handcuffed, despite her repeatedly screaming that they were causing her pain. *See id.* at 1:46–2:30. Roughly fifteen minutes later Sergeant Tuttle arrived on the scene with leg shackles, and placed them on Ms. McClain's legs. *See id.* at 2:30–17:04. Deputy Outhouse and Sergeant Tuttle then lifted Ms. McClain by her arms and dragged her forty yards to a patrol car, during which time it can be seen on Deputy Smith's body camera that her neck and shoulders were forced into a contorted forward position while she repeatedly screamed that she was in pain. *See id.* at 17:30–18:40.

Upon arriving at the patrol car, Deputy Outhouse and Sergeant Tuttle attempted to push Ms. McClain into the backseat while ordering her to get inside. *See id.* at 18:40–20:50. (Ms. McClain contends in her opposition to Defendants' motion that she was unable to comply with these commands because her hands were cuffed behind her back and her ankles were shackled together.) Then, Sergeant Tuttle deployed his Taser on Ms. McClain's leg in drive-stun mode. *See id.* at 20:50–21:00. He did not give her any prior warning that he would do so, other than vaguely stating to his fellow officers "here it comes" a few seconds beforehand. *See id.*

After locking Ms. McClain into the backseat of the patrol car, Deputy Smith drove her to the hospital, where she refused treatment. *See* Doc. 42, ¶¶ 39–40. He then took Ms. McClain to the jail, where she was charged with two counts of battery, obstruction of government operations, resisting arrest, and disorderly conduct. *See* Doc. 2, ¶ 64; Doc. 5, ¶ 64. All charges against her were later dropped. *See* Doc. 2, ¶ 64; Doc. 5, ¶ 64. Deputy Smith and Sergeant Tuttle were subsequently formally reprimanded by the Sebastian County Sheriff for their conduct during this arrest. Specifically, Deputy Smith was reprimanded for having forcibly removed Ms. McClain

from her vehicle when there was no need to do so, *see* Doc. 41-14, p. 3, and Sergeant Tuttle was reprimanded for deploying his Taser on Ms. McClain while she was restrained and only passively resistant, and for failing to warn her of his intention to deploy the Taser before using it, *see* Doc. 41-13, p. 4.

As already mentioned above, Defendants Tuttle, Smith, and Outhouse previously moved for summary judgment on Ms. McClain's claims against them, arguing that they were entitled to qualified immunity. This Court denied their motion with respect to that issue; but on appeal the Eighth Circuit vacated that ruling and remanded with instructions for this Court to perform an individualized qualified immunity analysis with respect to *each* Defendant rather than considering their actions collectively. That individualized analysis is the purpose of the instant opinion and order.

## II. Legal Standard.

On a motion for summary judgment, the Court views the record in the light most favorable to the nonmoving party, grants all reasonable factual inferences in the nonmovant's favor, and only grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016). The nonmovant may not rely only on allegations in the pleadings but must identify specific and supported facts that will raise a genuine and material issue for trial. *Ryan v. Cap. Contractors, Inc.*, 679 F.3d 772, 776 (8th Cir. 2012). Facts are material when they can "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes are genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The

burden of demonstrating the absence of any genuine issue of material fact rests on the movant. *Haggenmiller*, 837 F.3d at 884.

**III. Discussion.**

"At summary judgment, qualified immunity shields a law enforcement officer from liability in a § 1983 action unless: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Barton v. Taber*, 908 F.3d 1119, 1123 (8th Cir. 2018) (internal quotation marks omitted). "The right to be free from excessive force in the context of an arrest is clearly established under the Fourth Amendment." *Robinson v. Hawkins*, 937 F.3d 1128, 1135 (8th Cir. 2019). The test of whether force was excessive is an objective one, evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," allowing for the fact that officers often must make split-second decisions in tense, uncertain, and rapidly-evolving circumstances. *See Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009). Factors relevant to this inquiry "include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [she] is actively resisting arrest or attempting to evade arrest by flight." *Id.* (internal quotation marks omitted). Ms. McClain's claims under ACRA, Ark. Code Ann. § 16-123-105(a), are analyzed coextensively with her claims under 42 U.S.C. § 1983. *See Brewington v. Keener*, 902 F.3d 796, 801 n.3 (8th Cir. 2018).

The Court will begin its analysis with Deputy Smith's forcible removal of Ms. McClain from her vehicle. Deputy Smith testified at his deposition that when he arrived at the car, Deputy Outhouse informed him that Ms. McClain had started the vehicle and but that he had then taken the keys from her. *See* Doc. 38-1, p. 44. As already mentioned above, when Deputy Smith

repeatedly asked Ms. McClain to get out of the vehicle, she did not respond to him and instead continued trying to stuff the airbag back into the steering column. A jury could find from these facts that a reasonable officer in Deputy Smith's position would have believed that Ms. McClain was injured from the wreck, had not committed any serious offense, did not pose any threat of dangerously operating her vehicle (because she no longer possessed the keys), and was too disoriented and injured to understand or comply with his requests to exit her vehicle (given her lack of response and her obviously futile attempts at repairing a deployed airbag). Accordingly, there is a genuine issue of fact as to whether Deputy Smith's forcible removal of Ms. McClain from her vehicle constituted excessive force. After all, it has long been clearly established in the Eighth Circuit that "force is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public." *Brown*, 574 F.3d at 499.

It is certainly true that *after* Deputy Smith pulled Ms. McClain from her vehicle she began screaming and cursing at the officers. And Defendants maintain that *after* Ms. McClain was physically restrained she attempted to kick the arresting officers. But a jury could reasonably find that this latter claim is untrue, given that she is never actually seen attempting to kick them in the video footage of her arrest. And the Eighth Circuit has made clear that once an officer "crosse[s] the line" of clearly established excessive force, he will "no longer be immune from liability no matter how many expletives come [his] way" after that fact. *See Cartia v. Beeman*, 122 F.4th 1036, 1043 (8th Cir. 2024). Therefore, Deputy Smith is not entitled to qualified immunity for his use of force in removing Ms. McClain from her vehicle.

Turning now to Deputy Outhouse: he is not the officer who pulled Ms. McClain from her vehicle, and he is not the officer who drive-stunned her with a Taser. Rather, his uses of force at

issue here are when he and Deputy Smith sat on Ms. McClain and used their knees to keep her pinned to the ground after handcuffing her, despite her repeatedly screaming that they were causing her pain, and when he and Sergeant Trotter dragged her from there to the patrol car after her legs were shackled. Regarding the former use of force, the Eighth Circuit has recently held that arrestees do *not* have a clearly established right to be free from prone restraint while officers use their own bodies to apply force to various parts of the arrestee's body. *See id.* at 1042. So Deputies Outhouse and Smith are both entitled to qualified immunity for that particular use of force. Similarly, this Court has not been able to find any "controlling authority or . . . robust consensus of cases of persuasive authority," *Lombardo v. City of Saint Louis*, 38 F.4th 684, 690 (8th Cir. 2022), that would have put Deputy Outhouse and Sergeant Trotter on notice that arrestees who are either unwilling or unable to walk have a clearly established right not to be lifted and dragged to the patrol car after they have been subdued. So they are entitled to qualified immunity for that particular use of force as well.

The Court turns now to the use of force for which only Sergeant Trotter is responsible: the use of the Taser. Here, a jury could find from the video of the incident that Ms. McClain was physically incapable of complying with the instructions she was being given to get into the patrol car, because of the way that her hands were cuffed and legs were shackled, and because of the extreme pain she was in. A jury could also find that at this moment Ms. McClain was not actively resisting the officers' commands, and that at most any resistance she was offering was passive in nature. And a jury could find that at this moment Ms. McClain did not pose any threat to the officers' safety and did not pose any risk of fleeing. Accordingly, there is a genuine issue of fact as to whether Sergeant Trotter's use of his Taser on Ms. McClain constituted excessive force. The Eighth Circuit held as far back as 2009 that "the law was sufficiently clear to inform a reasonable

officer that it was unlawful to Taser a nonviolent, suspected misdemeanant who was not fleeing or resisting arrest, who posed little to no threat to anyone's safety, and whose only noncompliance with the officer's commands was to disobey two orders to end her phone call to a 911 operator." *Brown*, 574 F.3d at 499. Importantly, in that case like in the instant one, the Taser at issue was applied "in drive stun mode." *Id.* at 495. Also importantly, in that case *unlike* in the instant one, the officer even provided a warning before using the Taser. *See id.* Therefore, Sergeant Trotter is not entitled to qualified immunity for his use of force in Tasing Ms. McClain.

**IV. Conclusion.**

IT IS THEREFORE ORDERED that Defendant Jonathan David Outhouse is entitled to summary judgment on Plaintiff Tyler Unique McClain's claims against him, which must be DISMISSED WITH PREJUDICE on the grounds of qualified immunity.

IT IS FURTHER ORDERED that Defendant Nick Tuttle is not entitled to qualified immunity on summary judgment for Plaintiff's claim against him regarding his use of a Taser against her, and that Defendant Brent Thomas Smith is not entitled to qualified immunity on summary judgment for Plaintiff's claim against him regarding his forcible removal of her from her vehicle. Those claims remain for trial.

IT IS SO ORDERED this 7th day of October 2026.

/s/ David Clay Fowlkes
DAVID CLAY FOWLKES
UNITED STATES DISTRICT JUDGE